FILED

2026 Jul-28  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No.: 2:09-cr-501-HDM |
| | ) | |
| JOHNNY LAMAR WESSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court[1] on Defendant Johnny Lamar Wesson's pro se Motion for Compassionate Release or Reduction of Sentence. (Doc. 17). The United States opposes the motion. (Doc. 22). Wesson principally contends that his aggregate 480-month sentence is unusually long and that decisions issued after his 2010 sentencing undermine his conviction for production of child pornography, the application of a Guidelines enhancement, and the decision to impose consecutive sentences. After careful review of the parties' submissions, the record identified in those submissions, and the governing law, the motion is due to be **DENIED**.

---

[1] This case was reassigned to this court on July 10, 2026.

## I.   BACKGROUND

In 2010, Wesson pleaded guilty to three counts charged in an Information: production of child pornography, in violation of 18 U.S.C. § 2251(a) (Count One); possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two); and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count Three). (Doc. 16; Doc. 22 at 1–2). The court imposed 360 months on Count One and 120 months on Counts Two and Three. The sentences on Counts Two and Three run concurrently with each other but consecutively to the sentence on Count One, resulting in a total term of 480 months. (Doc. 16; Doc. 22 at 1 n.1).

The Presentence Investigation Report ("PSR"), as summarized in the Government's response, reflects that investigators traced peer-to-peer sharing of child pornography to an internet address associated with Wesson. A search of his residence yielded a computer containing child pornography and video images of an eleven-year-old girl naked in a bathroom. The PSR states that Wesson appeared in the recording adjusting the camera so that the toilet and shower were in view, and forensic analysis showed that the recordings were made on two dates. The child also reported that Wesson had touched her inappropriately on two occasions and, on the day of the search, told her to accept blame for child pornography found on his computer. (Doc. 14, ¶¶ 7–14; Doc. 22 at 2–3).

2

According to the Government, Wesson is now fifty years old, is incarcerated at FCI Oakdale, and has a projected release date of December 4, 2043. As of April 2026, he had served approximately sixteen years. (Doc. 22 at 3).

Wesson filed this motion in June 2025. He expressly identifies his request as non-medical. (Doc. 17-1 at 2). He argues that his sentence is substantially longer than average sentences in production cases; that U.S.S.G. § 4B1.5(b)(1) was misapplied; that *United States v. Booker*, 543 U.S. 220 (2005), and 18 U.S.C. § 3553 require correction of a sentencing disparity; that *United States v. Holmes*, 814 F.3d 1246 (11th Cir. 2016), and decisions from other courts undermine the production count; that the Information was deficient; that the Government's proof did not establish a lascivious exhibition or his intent; and that the sentences should have run concurrently. (Doc. 17 at 1–5). He asks for immediate release or a reduction to 168 to 210 months. (*Id.* at 5). His release plan is to live with his sister in Louisiana, use trust funds while seeking construction work, and limit his use of electronic devices through his sister's supervision and monitoring software. (*Id.*).

## II.   GOVERNING LAW

A district court has no inherent authority to modify a term of imprisonment after it has been imposed; it may do so only when a statute or rule authorizes the modification. *United States v. Puentes*, 803 F.3d 597, 605–06 (11th Cir. 2015).

3

Section 3582(c)(1)(A) is one such narrow authorization. After the statutory administrative prerequisite is satisfied, a court may reduce a term of imprisonment only if, after considering the applicable 18 U.S.C. § 3553(a) factors, it finds that extraordinary and compelling reasons warrant a reduction and that the reduction is consistent with the Sentencing Commission's applicable policy statement. 18 U.S.C. § 3582(c)(1)(A).

Three substantive conditions therefore must be satisfied: (1) extraordinary and compelling reasons must warrant a reduction; (2) the reduction must be consistent with U.S.S.G. § 1B1.13, including its requirement that the defendant not pose a danger to another person or the community under 18 U.S.C. § 3142(g); and (3) the § 3553(a) factors must support the reduction. *United States v. Tinker*, 14 F.4th 1234, 1237–38 (11th Cir. 2021); *United States v. Smith*, No. 25-13361, slip op. at 4–7 (11th Cir. June 2, 2026). Failure to satisfy any one condition forecloses relief, and the court may address the conditions in any order. *Tinker*, 14 F.4th at 1237–38; *United States v. Giron*, 15 F.4th 1343, 1347–48 (11th Cir. 2021). Wesson bears the burden of establishing that a reduction is authorized and warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

The current policy statement identifies medical circumstances, advanced age accompanied by deterioration, specified family-caregiving circumstances, qualifying abuse in custody, other circumstances similar in gravity to those

4

categories, and, in limited circumstances, an unusually long sentence as extraordinary and compelling. U.S.S.G. § 1B1.13(b)(1)–(6). Rehabilitation alone is not extraordinary and compelling. *Id.* § 1B1.13(d); 28 U.S.C. § 994(t). And, except within the confines of § 1B1.13(b)(6), a change in law may not be used to establish an extraordinary and compelling reason, although it may inform the extent of a reduction after an independent qualifying reason has been established. U.S.S.G. § 1B1.13(c).

A defendant may file a motion only after fully exhausting administrative appeals from the Bureau of Prisons' failure to act or after thirty days have elapsed from the warden's receipt of the request, whichever occurs first. 18 U.S.C. § 3582(c)(1)(A). This requirement is a nonjurisdictional claim-processing rule that must be enforced when properly invoked. *United States v. Harris*, 989 F.3d 908, 909–11 (11th Cir. 2021). The court may resolve a § 3582(c) motion on the written submissions; Rule 43(b)(4) does not require the defendant's presence for a proceeding involving a sentence reduction under § 3582(c). Fed. R. Crim. P. 43(b)(4).

## III.    DISCUSSION

### A. Administrative Exhaustion

Wesson states that he submitted a request to the warden at FCI Petersburg on March 24, 2025, and attaches a dated copy. He further states that he was transferred before receiving a response. (Doc. 17-1 at 1, 4). The Government represents that the Bureau of Prisons has no record of the request and invokes the exhaustion requirement. (Doc. 22 at 5). The court need not resolve that factual dispute. Even assuming solely for purposes of this order that Wesson satisfied § 3582(c)(1)(A)'s administrative prerequisite, every substantive requirement for relief independently fails. *See Giron*, 15 F.4th at 1347–48.

### B. Wesson Has Not Shown an Extraordinary and Compelling Reason

*1. His attacks on the conviction and original sentence are not cognizable under § 3582(c)(1)(A).*

Much of Wesson's motion argues that he should not have been convicted or sentenced as he was. He challenges the Information, the sufficiency and recovery of the recordings, the accuracy of their dates, the Government's proof of intent and knowledge, the application of § 4B1.5(b)(1), and the decision to impose consecutive terms. He invokes *Brady v. Maryland*, 373 U.S. 83 (1963), the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence. These are collateral attacks

6

on the validity of his conviction or original sentence, not present personal circumstances warranting compassionate relief.

The Supreme Court has now made the governing distinction explicit. A prisoner who collaterally attacks the validity of a federal conviction must proceed under 28 U.S.C. § 2255, not § 3582(c)(1)(A), and the asserted invalidity of a conviction is not an extraordinary and compelling reason for compassionate release. *Fernandez v. United States*, 608 U.S. ___, ___, No. 24-556, slip op. at 1, 5–17 (May 28, 2026). The inquiry turns on the substance of the prisoner's arguments. There is an "obvious distinction" between a prisoner asserting that he should not have been convicted and one asserting that current circumstances warrant compassion. *Id.* at ___, slip op. at 15. Wesson's charging, evidentiary, intent, and sufficiency arguments fall into the former category. His claims of original sentencing error likewise belong, if anywhere, in the postconviction framework Congress supplied in § 2255. *See* 28 U.S.C. § 2255(a); *Dillon v. United States*, 560 U.S. 817, 825–26 (2010) (a sentence-modification proceeding is not a plenary resentencing).

The procedural rules Wesson cites do not provide a different route. Rule 4(a) addresses a warrant or summons issued on a complaint; Rule 7(c)(1) governs the contents of an indictment or information; and Rule 12(b)(3)(B) addresses motions alleging defects in a charging instrument. Federal Rule of Evidence 401—which has no subdivision (b)—defines relevance. None authorizes modification of a final

7

sentence. Nor does Rule 35 help: Rule 35(a) permits correction of clear sentencing error only within fourteen days after sentencing, and Rule 35(b) requires a Government motion based on substantial assistance. Fed. R. Crim. P. 35. Section 3582(c)(1)(A) cannot be used to evade those limits or the limits Congress placed on § 2255.

The court therefore does not adjudicate the merits of Wesson's collateral claims in this proceeding. And because recharacterizing a pro se filing as a first § 2255 motion can have significant consequences, the court declines to recharacterize the present motion. *See Castro v. United States*, 540 U.S. 375, 383 (2003). The court expresses no view on the availability, timeliness, procedural status, or merits of any collateral remedy.

**2.** *Wesson has not identified a qualifying change in law that produces a gross sentencing disparity.*

Section 1B1.13(b)(6) permits limited consideration of an unusually long sentence when a defendant has served at least ten years and a qualifying change in law would produce a gross disparity between the sentence being served and the sentence likely to be imposed when the motion is filed, after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6). Contrary to Wesson's reading, subsection (c) is principally a limitation on changes in law; it is not an independent grant of eligibility. *Id.* § 1B1.13(c).

After briefing closed, the Supreme Court decided *Rutherford v. United States*, 608 U.S. ___, Nos. 24-820 & 24-860, slip op. at 8–17 (May 28, 2026). *Rutherford* holds that when Congress makes a statutory sentencing amendment nonretroactive, the resulting difference between a pre-amendment sentence and a post-amendment sentence is not an extraordinary and compelling reason, whether considered alone or with other factors. *Id.* at ___, slip op. at 8, 15–17. The Court invalidated § 1B1.13(b)(6) only to the extent the policy statement says otherwise in that setting. *Id.* at ___, slip op. at 16–17. *Rutherford* also explains that disagreement with the severity of a lawfully authorized punishment is not itself an extraordinary and compelling reason and that combining such an impermissible ground with other insufficient considerations does not create eligibility. *Id.* at ___, slip op. at 15. The Government argues more broadly that subsection (b)(6) is invalid in its entirety. The court need not reach that broader contention because Wesson fails the subsection's own requirements. *See Smith*, No. 25-13361, slip op. at 5–7 (rejecting an unusually-long-sentence claim where the defendant failed to identify an intervening change in law capable of producing the required gross disparity).

Wesson has served more than ten years, but that threshold fact is not enough. Assuming without deciding that a judicial decision may constitute a "change in the law" within the surviving scope of subsection (b)(6), he has not identified a

controlling decision that changed the law in his favor or would make a materially lower sentence likely today.

Booker was decided in 2005, five years before Wesson was sentenced. It therefore is not an intervening change in law. And Booker's advisory-Guidelines framework does not create a continuing obligation to revise a final sentence whenever later sentencing data differ. United States v. Williams, 553 U.S. 285 (2008), also predated Wesson's sentence and concerned the federal pandering provision; it did not displace the Eleventh Circuit's later analysis in Holmes or supply a new basis to vacate Wesson's production conviction.

Wesson argues that Holmes would have required dismissal because he says he placed the camera only to learn who was taking his medication. But Holmes cuts in the opposite direction. There, the Eleventh Circuit held that a lascivious exhibition may be created by the person who surreptitiously records an otherwise innocent child. The producer's conduct—including camera placement, focus, angle, and editing—may make the depiction lascivious. 814 F.3d at 1251–53. Holmes upheld a production conviction involving surreptitious bathroom recordings; it did not adopt a rule that would require dismissal whenever the child was engaged in ordinary bathroom activity.

The PSR here, as summarized by the Government, states that Wesson adjusted the camera so that the toilet and shower were in view and that recordings were made

10

on two dates. (Doc. 14, ¶¶ 8–11; Doc. 22 at 2). Wesson now offers a different purpose and different account of the camera's position. Section 3582(c)(1)(A) does not permit the court to replace the sentencing record with a new factual narrative to revisit the conviction. *Fernandez*, 608 U.S. at ___, slip op. at 14–17.

The Eleventh Circuit recently reaffirmed *Holmes*, explaining that a lascivious exhibition does not require a sex act and that the producer's conduct may render an otherwise innocent depiction lascivious. *United States v. Velinov*, No. 23-12136, slip op. at 17–23 (11th Cir. July 8, 2026) (per curiam) (unpublished). *Velinov* cited *United States v. Hillie*, 39 F.4th 674, 689–90 (D.C. Cir. 2022), as contrary authority while leaving the Eleventh Circuit's approach unchanged. *Id.* at 22–23. *Hillie* is nonbinding in any event. And the *Nelson* matter Wesson appears to cite is a district-court postconviction proceeding, not a decision of the Eleventh Circuit. *See Nelson v. United States*, No. 5:17-cv-08012-MHH, 2021 U.S. Dist. LEXIS 77654 (N.D. Ala. Apr. 22, 2021). The other authorities Wesson references do not identify a published Eleventh Circuit decision changing *Holmes* in his favor. Thus, these decisions do not establish that Count One would be dismissed or that a gross sentencing disparity exists.

Wesson also invokes U.S.S.G. § 4B1.5(b)(1), arguing that two clips recovered from the camera were part of one short episode. But the post-sentencing Eleventh Circuit authority he cites does not narrow the enhancement as he suggests. *United*

11

*States v. Fox* holds that qualifying occasions need only be independent and distinguishable, not unrelated. 926 F.3d 1275, 1280–81 (11th Cir. 2019). And the court of appeals has held that conduct involving the same victim on separate dates can establish the required pattern. *United States v. Isaac*, 987 F.3d 980, 994 (11th Cir. 2021); *United States v. Boone*, 97 F.4th 1331, 1337–39 (11th Cir. 2024). These decisions do not demonstrate that current law would remove the enhancement. Whether the enhancement was correctly applied to the facts found in 2010 is an original sentencing question that § 3582(c)(1)(A) does not reopen.

Wesson cites "§ 5G2.1(c)," but the multiple-count provision is U.S.S.G. § 5G1.2. The 2009 version of § 5G1.2(c) directed concurrent sentences only when the sentence on the count carrying the highest statutory maximum was adequate to achieve the total punishment. If that count was not adequate, subsection (d) directed consecutive terms on one or more counts to the extent necessary to produce a combined sentence equal to the total punishment. U.S.S.G. § 5G1.2(c)–(d) (2009). In addition, 18 U.S.C. § 3584(a) authorizes a court imposing multiple terms to make them concurrent or consecutive, and § 3584(b) directs consideration of the § 3553(a) factors. Wesson has not identified any intervening change to these principles that makes a concurrent sentence likely today. *See Boone*, 97 F.4th at 1339 (applying § 5G1.2(d)).

12

Finally, Wesson relies on an asserted average sentence for production cases and identifies one purported comparator by surname and term of imprisonment. Those assertions are not changes in law. They also do not establish the sentence likely to be imposed on Wesson today. His 480-month term covers three offenses, not production alone, and the motion supplies no information showing that the cited defendants had similar records, offense conduct, victims, counts of conviction, Guidelines calculations, statutory exposure, plea terms, or cooperation. Section 3553(a)(6) concerns unwarranted disparities among defendants with similar records who were found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). A valid comparison must be "apples to apples." *United States v. Docampo*, 573 F.3d 1091, 1101–02 (11th Cir. 2009). Aggregate statistics are informative background at most; they do not supplant an individualized sentencing analysis. *See Velinov*, No. 23-12136, slip op. at 25–29. Wesson therefore has not shown a gross disparity attributable to a qualifying change in law.

**3.** *No other category or catchall circumstance applies.*

Wesson does not allege a terminal or serious medical condition, qualifying age-related deterioration, a qualifying family-caregiving need, or abuse while in custody. *See* U.S.S.G. § 1B1.13(b)(1)–(4). He mentions that his mother lives in a nursing home near his proposed residence, but he does not contend that he is her only available caregiver or provide evidence satisfying § 1B1.13(b)(3). His legal

13

arguments, the length of his sentence, the time he has served, and his release plan are not, individually or collectively, similar in gravity to the circumstances listed in subsections (b)(1) through (b)(4). *See Smith*, No. 25-13361, slip op. at 5–7. Nor does the motion provide a developed record of rehabilitation. In any event, rehabilitation cannot by itself constitute an extraordinary and compelling reason. U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t).

### C. The § 3553(a) Factors Independently Require Denial

Even if Wesson had established eligibility, the applicable § 3553(a) factors would independently foreclose a reduction. The court has considered all applicable factors, including the nature and circumstances of the offenses; Wesson's history and characteristics; the seriousness of the offenses; respect for the law; just punishment; deterrence; protection of the public; the available sentences and Guidelines considerations; and the need to avoid unwarranted disparities. *See* 18 U.S.C. § 3553(a). A court need not discuss every factor mechanically, but its reasoning must permit meaningful review. *United States v. Cook*, 998 F.3d 1180, 1184–85 (11th Cir. 2021).

The nature and circumstances of these offenses weigh heavily against a reduction. Wesson pleaded guilty to producing child pornography involving an eleven-year-old child secretly recorded while naked in a bathroom, as well as receiving and possessing other child pornography. The sentencing record, as

14

summarized in the response, also includes the child's reports of inappropriate touching and Wesson's effort to have her accept blame for material found on his computer. (Doc. 14, ¶¶ 7–14; Doc. 22 at 2–3, 20–22). This conduct exploited a particularly vulnerable victim, invaded her privacy, and was accompanied by separate receipt and possession offenses. It warrants substantial punishment and strong specific and general deterrence.

The court has also considered the time Wesson has served and the positive features of his proposed release plan: family housing, financial assistance, employment experience, and proposed controls on electronic devices. Those considerations carry some weight. But the motion seeks a reduction to 168 to 210 months—effectively immediate or near-immediate release after approximately sixteen years—even though the Government reports a projected release date in December 2043. Such a reduction would eliminate many years from the sentence imposed for three serious offenses. On this record, it would materially undercut the seriousness of the offenses, just punishment, respect for the law, deterrence, and protection of the public.

Nor has Wesson shown an unwarranted disparity. His generalized statistics and undeveloped comparator do not account for the individualized features of his case or show similarly situated federal defendants. *See Docampo*, 573 F.3d at 1101–02. Considering the record as a whole, the sentence remains sufficient but not greater

than necessary to serve the statutory purposes of sentencing. The § 3553(a) factors therefore weigh decisively against relief.

### D. Wesson Has Not Shown That He Is Not a Danger

A reduction also must be denied unless the court determines that the defendant is not a danger to any other person or the community under the factors in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(a)(2). Those factors include the nature and circumstances of the offenses, the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of the danger posed by release. 18 U.S.C. § 3142(g).

The relevant factors do not permit the required finding. The offenses involved the sexual exploitation of a child in a private setting and the receipt and possession of child pornography. The weight of the evidence is reflected in Wesson's guilty plea. The sentencing record includes the minor's reports of inappropriate contact and Wesson's attempt to shift responsibility to her. Although his sister's support and proposed device controls are relevant, the plan does not include a current risk assessment, evidence of sex-offender treatment, or other evidence sufficient to demonstrate that the risk to minors and the community has materially abated. The motion therefore does not establish that Wesson is not a danger within the meaning of § 1B1.13(a)(2).

16

## IV.    CONCLUSION

Wesson has not established an extraordinary and compelling reason warranting release, the § 3553(a) factors do not support a reduction, and Wesson has not shown that he is not a danger to another person or the community. Each ground independently requires denial. Accordingly, Wesson's Motion for Compassionate Release and/or Reduction of Sentence, (doc. 17), is **DENIED**.

To the extent the motion seeks vacatur of a conviction, correction of an original Guidelines calculation, or a plenary resentencing, those requests are not cognizable under 18 U.S.C. § 3582(c)(1)(A), and the court declines to recharacterize the motion under 28 U.S.C. § 2255. The court **DIRECTS** the Clerk of Court to mail a copy of this Memorandum Opinion and Order to Wesson at his address of record.

**DONE** and **ORDERED** this July 28, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE